N. S. YOUNG, Appellant, v. MAHASKA COUNTY, Appellee; CITY OF OSKALOOSA, Appellant.

Municipal Corporations: PUBLIC SQUARES: DEDICATION: EVIDENCE. Where a plat of a town, made by a county upon land of its own, showed a public square surrounded by blocks divided into lots, the evidence showed that the original dedication of said square was for a public use, but that for fifty years the county had not made use of the same for any public purpose of its own; that on the contrary the county reserved two lots facing said square, on which it subsequently erected its court house; that during all of the above period the square was used as a city park, and such use had never been questioned by the county; that both the city and county had contributed to the expense of improving the grounds, but it did not appear that the county ever recognized any obligation to make such improvements, or claimed any right or interest in the property, held, that the evidence showed an intention on the part of the county to dedicate the square to the town for a public park; that it had been accepted as such by the town, and that the latter was liable for the cost of paving the streets on which the square abutted accruing under a contract made by the town.

*Appeal from Mahaska District Court.*—HON. D. RYAN, Judge.

WEDNESDAY, OCTOBER 4, 1893.

The city of Oskaloosa entered into an agreement with the plaintiff by which he was to pave certain streets in the city around a public square for a specified compensation. The work was properly done, and there remains unpaid for the part of the paving abutting on the public square that which would be assessable thereto. For this part of the paving the city issued certificates of assessments against the public square and Mahaska county. The county refused payment, and this suit is against both the city and county, each denying its liability. The district court found for the plaintiff against the city, and for the county. Both the city and the plaintiff appeal.—*Affirmed.*

*Seevers & Seevers,* for N. S. Young, appellant. *W. G. Jones* and *L. C. Blanchard,* for city of Oskaloosa, appellant.

*B. W. Preston, John F. & W. R. Lacy,* and *H. S. Winslow,* for Mahaska county, appellee.

GRANGER, J.—The cause was submitted on the following stipulation of facts, with some important facts omitted:

"*First.* The board of commissioners of Mahaska county, Iowa, on the fourteenth day of October, 1843, entered the southeast quarter of section 13, in township 75 north, of range 16 west of the fifth principal meridian, Iowa.

"*Second.* That said board of commissioners, on the twenty-fifth day of May, 1844, caused said lands to be surveyed and platted for a town site, and the plat filed for record, and located the town of Oskaloosa thereon,

a copy of which plat, together with their certificate and acknowledgment, is hereto attached, and made a part of this stipulation of facts, and marked 'Exhibit A.'

"*Third.* That the town of Oskaloosa was incorporated as a city under a special act of the legislature in 1855, and subsequently it reorganized under the general incorporation act of the state.

"*Fourth.* That the tract marked as 'Public Square' on the plat (Exhibit A) has never, since the execution of said plat, been used as a public square, and for many years has been inclosed by a fence, and set out with trees."

"*Sixth.* That on the twenty-first day of February, 1891, the city of Oskaloosa passed an ordinance, a copy of which ordinance is hereto attached, and marked 'Exhibit B.' "

"*Eighth.* When the town plat was made, and lots sold, the county reserved two lots one hundred and twenty feet deep, and fronting one hundred and twenty feet west on the street which bounds the public square on the east; said lots facing the said square, and eighty feet east thereof; and said county has since erected a courthouse on the said lots, and, when the contract to pave said square was made, said public square was surrounded by hitching rails of posts and iron rods, and was planted in trees, and the ground was seeded to grass, but had paving-tile walks running through the same. That no building was ever erected in said square by the county, and the only building ever constructed therein was a frame band stand, which is still on the said ground, except that temporary sheds were at one time erected on said land for use in covering machinery used in sinking an artesian well in said square. That said square has been used as a pleasure ground, and for public meetings, ever since the town was laid out. Wells were dug at each corner for public watering purposes. The artesian well has been

piped, but does not flow, and has been covered up and preserved, but it is not in use, and never has been used. The square is built around with permanent store buildings, and is in the business center of the city, and all lots save those reserved as herein stated were sold to various parties, and this was done prior to the year 1850. The county has paid for paving in front of the courthouse to the middle of the street, the same as all the other private property owners have done who owned property fronting upon said public square.

"*Ninth.* On the twenty-third day of January, 1873, the county passed a resolution in regard to the boring of an artesian well in the said public square. That thereupon John N. Dixon, a taxpayer of said county, commenced suit in the district court of Mahaska county, Iowa, to enjoin the said county from paying the sum appropriated in said resolution, and the said court enjoined the same by its decree against the board of supervisors of said county, said defendants making no defense. That said city, thereupon proceeded to drill said well at its own expense to a depth of two thousand seven hundred and fifty feet, and at a large cost.

*Tenth.* That the city has used its force of street workers from time to time to cut the grass, to clean the said square, to trim the trees therein, and generally to keep the same in a cleanly condition."

"*Eleventh.* When the courthouse was being built, in 1881, there was a large amount of earth belonging to the county to be removed from the courthouse lot, and the same was hauled out into the public square by the county's contractor, with the consent of the city and county, and used in filling up and grading the same, the expense of excavating and hauling said earth into the said square being paid by the county. That the city authorities took charge of the grading of said square, and put its street commissioners and a force of men to work to level off said square as the dirt was

hauled in, and the said square was graded by the city, and the leveling done under its direction, the expenses, except the digging and grading, being borne by said city.

"*Twelfth.* That notices have been kept posted up by the city in the square for many years forbidding persons to walk upon the grass or in any manner injure the trees therein.

"*Thirteenth.* That on September 11, 1888, the board of supervisors of said county made an appropriation of two hundred dollars for the purpose of building cross walks through said public square. The city also appropriated one hundred dollars for said purpose. The balance of the cost of the construction of said walks was paid by private subscription. Said work was done under the supervision of the county surveyor under direction of a committee of citizens."

"*Fifteenth.* That in 1888 the county furnished a considerable quantity of rock, and caused the same to be broken by its convicts, and the same was placed around the outer edge of said public square in the street to aid the drainage, and to make the same more convenient for hitching places for teams from the country. Such rock was so put in to the width of about ten feet clear around such square. The county has for several years, commencing prior to 1888, furnished in its jail yard a large quantity of limestone to furnish employment for convicts, and the convicts have worked breaking the stone into a size suitable for macadamizing. That the stone was put around the square in the streets by the city's street commissioners at the city's expense, the city doing the grading and hauling, and the county gave the stone without expense to the city.

"*Sixteenth.* The fence about the public square heretofore referred to does not now inclose the square so as to prevent ingress and egress by foot passengers, being left open at either corner, though at one time it

was so inclosed, persons passing through or over by means of a 'stile,' the fence now being placed in the street, and immediately adjoining the square, though the first one was on a line with the square, a hitching rail being placed around and outside of it.''

I.    It will be seen that Mahaska county owned the quarter section of land on which was originally located the town of Oskaloosa, and platted and located the same.    The plat referred to in the findings of fact shows the public square to be a block surrounded by other blocks, subdivided into lots.    There seems to be a concession in argument that by the making and recording of the plat, resulting in the location of the town, there was a dedicatory intent as to the public square, as well as to streets and alleys, but there is not an agreement as to what the intent was.    It is not questioned, either, but that the intent was to dedicate it to some public use; but a claim is that it does not appear that the intent was to dedicate it to the use of the town, now the city, but that it is reasonable to say that it was designed for the use of the county in a public way, as by the erection of a courthouse or other public building thereon.    It is difficult, of course, to know the original intent.    The admitted facts show the original dedication for a public use; that for about fifty years the county has not made use of the square for any public purpose of its own; that when the plat was made, and the lots sold, the county reserved two lots on which it has since erected its court house, and that the county has asserted no right to the use and occupancy of the grounds. Other facts, not to be questioned, are that the uses of the square are those usually of public grounds or parks in a city without dispute by the county.    These facts, to our minds, warranted a conclusion by the district court that the original intent was to dedicate it for such purposes, and that it was so accepted by the town and city.

Considerable is said in argument as to the *status* of the title; that is, where rests the fee-simple title. It is said on behalf of the county that it does not hold it, because it has never rested with it, the original entry being made by the board of commissioners, by law a body corporate, before the county was organized, and it was this board that platted and located the town. This view is not in harmony with the facts as stipulated. The stipulation is that the land was "entered" by the "board of commissioners of Mahaska county," and that said board located and platted the town. It is urged that facts, of which the court should take judicial notice, show that the county was not then organized, and there was no board of commissioners of such a county; but, as we understand, the facts were stipulated to govern this case, and as the difference in dates between 1843 and 1844, when the county was organized, is quite immaterial, the court will disregard that difference to preserve the substance of the stipulation. We do not, however, think that the fact that the legal title, technically, rests in the county, is of controlling importance. It surely possesses no title from which it does or can claim any beneficial interest in the block. If the legal title is in the county, it is there only in trust for its beneficiaries, those to whom its entire use was dedicated. At the time of the dedication in question a substantial conformity with the law in making and recording the plat would have vested the legal title of the public square in the town, but there is a claim that the law was not so observed, as to the acknowledgment, as to vest the title. That such was the intent is not to be doubted, and that fact is highly significant in reaching a conclusion as to the legal obligation of the city and county in bearing the legal burdens incident to the improvements and use of the property. Let it be conceded that there was such a defect in the observance of statutory requirements as to defeat an evident

intent to convey a legal title, and let it be further conceded, as it should be, that such an intent has, at all times, for about fifty years, been observed on the part of the county, and that the town and city have exercised a control over, and used, the property by virtue of the intent manifested by the plat and record, as made; and what would be the conclusion as to the ownership of the property under adverse claims of the city and county? There should be no difference of opinion on the legal proposition; nor would the courts hesitate in such a case to quiet the title in accord with the evident intentions of the parties so long observed. Without, then, deciding whether or not the legal title reposes, for trust purposes, in the county, we need only say that, if there, it is only for the city, and the square is as conclusively the property of the city, for the objects of the dedication, as if the attempt to convey the legal title had been successful. It may safely be said that, if the legal title is not now in the city, it is at its bidding, as against the county, and has been for many years past.

After an examination of the entire record, we conclude that there is no principle of law or equity that should impose the burden of the improvement upon the county. It is true that it has, in some instances, aided in the improvement of the property, but it does not appear that it did so because obligated so to do, or because it claimed any right or interest in the property. It reserved lots adjacent thereto on which its public buildings are placed, and there are reasons why the authorities might have thought it proper to aid in improving or beautifying the grounds. The city made the contract for the work, and it is the only party benefited by it. If the county is not liable, surely the city is, and we think this conclusion is not seriously doubted.

II. It is urged by the city that the claim of a dedication is not available in the case, because not pleaded.

The plaintiff seeks to recover from the county because the owner of the square. The answer denies ownership, and contains averments to the effect that the city took charge of the square, and made improvements thereon, and had assumed to exercise control over the same, and improve the same for its own use and benefit, and for the benefit of the public. Under the issue thus formed, the stipulation of facts was made without objection to the pleading. It seems to us that, under such a state of the record, the fact of dedication may be considered as being the understanding of the parties as to the issues. The giving of such property for public use, whether by deed or otherwise, is a dedication, and that seems to have been the prominent thought during the trial. We think it is now too late to question such an issue.

Many questions have been argued, but the foregoing considerations control the case as to both appeals, and as to both the judgment of the district court is AFFIRMED.